**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BARBARA BERG,
individually and on behalf of all,
others similarly situated,  **CLASS ACTION**

    Plaintiff,  **JURY TRIAL DEMANDED**

v.

USHEALTH ADVISORS, LLC,

    Defendant.
_____/

**CLASS ACTION COMPLAINT**

Plaintiff Barbara Berg, individually and on behalf of all other persons similarly situated, complains and alleges as follows:

**NATURE OF ACTION**

1. Defendant is wholly-owned subsidiary of USHEALTH Group, and offers specified disease/sickness, life, and supplement insurance products.

2. To advertise its insurance products, Defendant engages in unsolicited text message marketing, with no regard for the rights of the recipients of those solicitations.

3. Plaintiff brings this action for statutory damages and other legal and equitable remedies resulting from the illegal actions of Defendant in transmitting advertisement and telemarketing text messages to the cell phones belonging to Plaintiff and numerous other similarly situated persons using an automatic telephone dialing system ("ATDS") without prior express written consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. Through this action, Plaintiff seeks to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## PARTIES

5. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen of and domiciled in Miami-Dade County, Florida, and the subscriber and user of the cellular telephone number (305) \*\*\*-7119 (the "7119 Number").

6. Defendant is, and at all times relevant hereto was, incorporated under the laws of Texas and a "person" as defined by 47 U.S.C. § 153(39). Defendant's primary place of business is in Fort Worth, Texas. Defendant is registered to do business in Florida, and has designated CT Corporation System in Plantation, Florida as its registered agent for service of process in Florida.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

8. This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

9. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's significant contacts with this State. Defendant initiated and directed, or caused to be initiated and directed by its agent(s), telemarketing and/or advertisement text messages into Florida, via an ATDS and without the recipients' prior express written consent, in violation of the TCPA.

10. Specifically, Defendant initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited advertisement or telemarketing SMS text messages to the 7119 Number to sell products and services in Florida. The 7119 Number has an area code that specifically coincides with locations in Florida, and Plaintiff received such messages on the 7119 Number while residing in and physically present in Florida.

11. Plaintiff's claims for violation of the TCPA against Defendant, and the resulting injuries caused to Plaintiff by Defendant's advertisement and telemarketing messages, which includes the invasion of Plaintiff's privacy, arose in substantial part from Defendant's direction of those messages into Florida.

12. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because a substantial part of Defendant's actions and omissions, as well as Plaintiff's suffered injuries, which gave rise to the claims asserted in this action occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

13. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA in 1991. To prevail in an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14. By enacting the TCPA, Congress made specific findings that "unrestricted marketing can be an intrusive invasion of privacy" and a "nuisance." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012).

Through the TCPA, Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing calls and advertisements. *See* Pub. L. 102–243, § 2, ¶ 12.

15. According to findings by the Federal Communications Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited absent the requisite consent because such transmissions are a greater nuisance than live solicitation calls, and receiving and addressing such calls and texts can be costly and inconvenient.

16. According to a recent study conducted by the Pew Research Center, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones." Indeed, one of the most prevalent bulk advertising and telemarketing methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones.

17. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are physically carried by their owners, SMS text messages are received virtually anywhere in the world.

18. Unlike more conventional advertisements, advertising and telemarketing SMS text messages can actually cost their recipients money. This is because wireless phone users must either pay their wireless service providers for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is even authorized or wanted.

19. In 2013, in response to growing concern over unwanted advertisements and telemarketing material being sent to consumers via SMS text message, the FCC updated its rules on consent to require that companies obtain the "prior express written consent" of the recipient before using an ATDS to make any call or send any SMS text message that contains "advertisements" or "telemarketing." *See* 47 C.F.R. 64.1200(f)(8).

20. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the recipient's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

22. Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

23. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and*

5

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

24. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139–142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

25. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute [telemarketing]" under the TCPA. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

26. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991–92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

27. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A); *Toney v. Quality Res., Inc*., 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

28. On or about September 12, 2019 and September 25, 2019, Defendant sent or caused to be sent to the following text messages to the 7119 Number:

> 774-53
>
> Thu, Sep 12, 9:48 AM
>
> USHA:Cigna Health Plans for Real Estate agents. New low premiums and custom plans. Don't wait for open erollment. Reply Yes for Free quote Txt STOP to OptOut
>
> Today 2:11 PM
>
> USHA:Stop paying market place prices. New health plans you can qualify under Realestate assocation.

29. As is apparent on the face of the text messages, the messages advertise the commercial availability of Defendant's property, goods, and/or services and encourage the future purchase or investment in property, goods, and/or services.

30. Plaintiff received the subject text in Miami-Dade County, which is within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

31. Upon information and belief, Defendant caused other text messages identical to the one above to be sent to individuals residing within this judicial district and throughout the United States.

32. The Plaintiff is the subscriber and sole user of the 7119 Number and is financially responsible for phone service to the 7119 Number.

33. The 7119 Number has been on the National Do Not Call Registry since December 15, 2004.

34. The 7119 Number begins with area code 305. Thus, Defendant knew or should have known that it was transmitting a text message to an individual located in Florida prior to transmitting the message.

35. The source of each of the unsolicited SMS text messages sent by Defendant to the 7119 Number was 774-53, which is an SMS short code owned or leased by or on behalf of Defendant or Defendant's agent(s) or affiliate(s), and is used for operating Defendant's text message campaigns, including the sending of SMS text messages telemarketing and advertising various of Defendant's goods and services.

36. All telephone contact by Defendant and/or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the 7119 Number occurred via an ATDS ("automated telephone dialing system") as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited telemarketing SMS text

messages were sent from 774-53, which is a short code telephone number used to message consumers *en masse*, and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Further, the complained of SMS text messages were written in a generic and impersonal manner, thus demonstrating that the text messages were sent to numerous other consumers.

37. To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

38. The Platform has the capacity to store telephone numbers.

39. The Platform has the capacity to generate sequential numbers.

40. The Platform has the capacity to dial numbers in sequential order.

41. The Platform has the capacity to dial numbers from a list of numbers.

42. The Platform has the capacity to dial numbers without human intervention.

43. The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

44. To transmit the messages at issue, the Platform automatically executed the following steps:

    (1) The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

    (2) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

(3) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

(4) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

45. The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

46. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



47. Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she wasted approximately twelve (12) seconds reviewing Defendant's unwanted messages. Plaintiff was at home when she received the text messages, which resulted in the disturbance of the domestic peace of Plaintiff's home.

48. Defendant's text messages took up memory space on Plaintiff's cellular telephone, with each message taking up approximately 190 bytes. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

49. Defendant's text messages also caused the depletion of Plaintiff's cellular telephone battery. The battery used to power Plaintiff's cellular telephone can only be recharged a limited number of times before the battery's voltage begins to decrease, causing the cellular phone to turn off completely, without warning, if the battery drops below the minimum voltage needed to safely power Plaintiff's cellular telephone.

50. Plaintiff has no reason to believe, that absent a Court order, that Defendant would voluntarily stop violating the TCPA.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this lawsuit as a class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiff seeks to represent the following classes of individuals:

> **No Consent Class**: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, for the purpose of promoting Defendant's property, goods, and/or services.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days.

52. Excluded from the Class is Defendant, any entity in which the Defendant has a controlling interest, or which has a controlling interest in the Defendant, and any of Defendant's legal representatives, assigns or successors. Also excluded is any judge presiding over this case and any member of any such judge's immediate family. Members of the Class are referred to as "Class Members."

53. Plaintiff and all Class Members have been impacted and harmed by the acts of Defendant and/or its agents, affiliates or subsidiaries.

54. Plaintiff seeks injunctive relief and monetary damages on behalf of herself and the Class.

55. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(3). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

56. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, and/or judicial economy.

57. **Numerosity**. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is therefore impracticable to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impracticable. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

58. **Typicality**. Plaintiff received text messages from Defendant, sent via an ATDS, without first providing her "express written consent" to receive "advertisement or "telemarketing"

text messages via an "ATDS" within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of those of the other Class Members she seeks to represent, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class Members she seeks to represent. Plaintiff and all Class Members have been impacted by, and face continuing harm from Defendant's violations and/or misconduct as alleged herein.

59. **Adequacy**. As Class representative, Plaintiff has no interests that are adverse to, or conflict with, the interests of the absent Class Members and is able to fairly and adequately represent and protect the interests of the Class Members. Plaintiff has raised viable claims of the type reasonably expected to be raised by the Class Members and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Complaint to add additional representatives of the Class or assert additional claims.

60. **Competency of Class Counsel**. Plaintiff has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this action. These lawyers are experienced in handling complex class action claims, including class actions alleging violations of the TCPA, and have previously been appointed as class counsel in such cases.

61. **Commonality and Predominance**. There are well defined common questions of fact and law that affect all members of the Class and that predominate over any questions affecting only individual members of the Class. The common legal and factual questions, which do not vary from Class Member to Class Member, may be determined without reference to the individual circumstances of any Class Member, and include (but are not limited to) the following:

    a. Whether Defendant and/or any of its affiliates, subsidiaries, or agents transmitted advertising or telemarketing SMS text messages to Class Members' cellular telephones;

    b.   Whether the SMS text messages transmitted by Defendant and/or any of its affiliates, subsidiaries, or agents were transmitted using an automatic telephone dialing system;

    c.   Whether Defendant and/or any of its affiliates, subsidiaries, or agents can satisfy their burden in proving they obtained prior express written consent (as defined by 47 C.F.R. § 64.1200(f)(8)) to send the complained of text messages;

    d.   Whether Defendant's complained of conduct was knowing and/or willful;

    e.   Whether Defendant and/or any of its affiliates, subsidiaries, or agents should be enjoined from engaging in such conduct in the future.

    62.   **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if Class Members could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts for individual litigation of numerous cases to proceed. Individualized litigation also presents the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class Member. Plaintiff anticipates no difficulty in the management of this action as a class action.  Class wide relief is essential to compel compliance with the TCPA. The interest of Class Members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these class claims is likely to present significantly fewer

difficulties than are presented in many individual claims because the text messages at issue are all automated and the Class Members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class Members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

63. Additionally, the prosecution of separate actions by individual Class Members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class Members to protect their interests. The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

64. Defendant and/or any of its affiliates, subsidiaries, or agents have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate.

65. Moreover, on information and belief, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the No Consent Class)**

66. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

67. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service ….." 47 U.S.C. § 227(b)(1)(A)(iii).

68. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

69. Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

70. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express written consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

71. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

72. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

73. Should this Court determine that Defendant's conduct was knowing or willful, Plaintiff requests for the Court to treble damages.

**COUNT II**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

74. Plaintiff repeats and realleges the paragraphs 1 through 65 of this Complaint and incorporates them by reference herein.

75. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

76. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

77. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

78. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

79. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call

Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

80. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

81. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Barbara Berg, on behalf of herself and the other members of the Class, prays for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendant violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An award of actual, statutory damages, and/or trebled statutory damages; and

d. Such further and other relief the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff and Class Members hereby demand a trial by jury.

Date: October 3, 2019

                                                               Respectfully submitted,

                                                               **HIRALDO P.A.**
                                                               401 E. Las Olas Boulevard
                                                               Suite 1400
                                                               Ft. Lauderdale, Florida 33301


                                                               */s/ Manuel S. Hiraldo*
                                                               Manuel S. Hiraldo
                                                               Florida Bar No. 030380
                                                               Email: mhiraldo@hiraldolaw.com
                                                               Telephone: 954.400.4713
                                                               *Counsel for Plaintiff*