**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA (MIAMI)**

**CASE NO.: 1:19-cv-24097-AHS – Singhal/McAliley**

BARBARA BERG, individually and on behalf of all other similarly situated,

**CLASS ACTION**

Plaintiff,

v.

USHEALTH ADVISORS, LLC,

Defendant.
_______________________________________/

**DEFENDANT USHEALTH ADVISORS, LLC'S MOTION TO STAY PROCEEDINGS, OR ALTERNATIVELY TO BIFURCATE DISCOVERY, AND INCORPORATED MEMORANDUM OF LAW**

Defendant USHEALTH Advisors, LLC ("USHEALTH" or "Defendant"), through counsel, files this Motion to Stay Proceedings in this action pending the decision of the United States Supreme Court in *Barr v. American Association of Political Consultants*, No. 19-631. Alternatively, USHEALTH moves to bifurcate discovery to determine whether an automatic telephone dialing system ("ATDS") was used to send text messages to Plaintiff, and whether Plaintiff has standing to assert claims for violations of the National Do Not Call Registry.

**PRELIMINARY STATEMENT**

In her Class Action Complaint (ECF 1) ("Complaint"), Plaintiff Barbara Berg alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). Plaintiff contends that Defendant violated §§ 227(b)(1)(A)(iii) and (c)(5) of the TCPA. *See* ECF 1 at ¶¶ 71 and 80. USHEALTH has answered the Complaint and asserted numerous affirmative defenses, including that (1) Plaintiff's claims are barred because the TCPA violates USHEALTH's First Amendment right to free speech; (2) no ATDS was used to contact Plaintiff; and (3) Plaintiff's

claims are barred because her registration on the National Do-Not-Call registry is invalid as a result of holding her telephone number out to the public as a business telephone line. *See* ECF 10 at 11, 13 (Eighth, Fifteenth, and Seventeenth Affirmative Defenses).

Following a recent decision to grant *certiorari*, the United States Supreme Court is poised in approximately the next four months to determine whether the TCPA, and in particular at least one of the provisions under which this lawsuit has been brought, remains valid law or, if the Supreme Court agrees with the Fourth Circuit's ruling that § 227(b)(1)(A)'s exemption for calls that relate solely to efforts to collect a debt owed to or guaranteed by the United States violates the Free Speech Clause of the First Amendment to the United States Constitution and is therefore unconstitutional, whether the entire provision is invalidated in full. *See Barr v. American Ass'n of Political Consultants*, No. 19-631, 2020 WL 113070 (U.S. Jan. 10, 2020) ("*AAPC*"); *See Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 166-68, 171 (4th Cir. 2019). USHEALTH has asserted the First Amendment as an Affirmative Defense to the claims in the Complaint. *See* ECF 10 at 11 (Eighth Affirmative Defense). Respondents in *AAPC* expressly sought review of the severability ruling, and contend, as USHEALTH contends here, that the underlying restrictions on speech and the use of an ATDS in § 227(b)(1)(A) should be invalidated as unconstitutional. *See Barr v. American Ass'n of Political Consultants*, No. 19-631, 2019 WL 6609436, *2 (U.S. Dec. 4, 2019) (Brief for Respondents in Support of *Certiorari*).

Oral argument in *AAPC* has been set for April 22, 2020. The Supreme Court is expected to rule by the end of this term in June 2020. That ruling may, as respondents in the appeal seek, invalidate the statute that is the source of Plaintiff's claims. Under these circumstances, the interests of judicial economy and the public welfare as well as the lack of any prejudice to Plaintiff weigh heavily in favor of staying the proceedings in this action pending the outcome of *AAPC*.

Just recently, a court in the Middle District of Florida stayed a similar TCPA case pending a ruling from the Supreme Court in *AAPC*. *See Wright et al. v EXP Realty, LLC*, Case. No 6:18-cv-1851-Orl-40EJK, ECF 99 (Feb. 7, 2020) (attached as Ex. A).

Additionally, the Eleventh and Seventh Circuits just recently clarified the definition of an ATDS, joining the Third Circuit in finding that random or sequential number generation is *required* in order for a telephone system to be considered an ATDS under the TCPA. *See Gadelhak v. AT&T Servs., Inc.*, No. 19-1738, 2020 WL 808270, at *1 (7th Cir. Feb. 19, 2020); *Glasser v. Hilton Grand Vacations Co., LLC*, No. 18-14499, 2020 WL 415811, at *2 (11th Cir. Jan. 27, 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018). Thus, a system that dials from a list of pre-loaded numbers – as Plaintiff has pleaded in this case, (*see* Compl.¶¶ 41, 44), does not constitute an ATDS. *See Gadelhak*, at *1; *Glasser*, at *2. Further, a device is not an ATDS when it "requires meaningful human interaction to dial telephone numbers." *Glasser*, at *7-8. If the system operates as Plaintiff alleges, then it does not fall within the purview of the TCPA and there is no liability. So, if the Court does not stay the action entirely, then it should bifurcate discovery to first address the merits of the ATDS allegations and then allow the parties to proceed with class-wide discovery only if the system constitutes an ATDS.

Finally, Plaintiff may have no standing to bring claims under § 227(c)(5) of the TCPA, for violations of the National Do Not Call Registry ("NDNC"), because she holds her telephone number out to the public as a business line. The law is clear that the NDNC only affords legal protection to *residential* telephone lines, and it is Plaintiff's burden to establish the telephone is residential. Thus, by holding her telephone number out to the public for business purposes, Plaintiff has lost any legal right she may have had by registering on the NDNC. This is another reason to bifurcate discovery to first address Plaintiff's individual claims, before engaging in class-

wide discovery, if the Court does not stay the action pending the Supreme Court's ruling in *AAPC*.

**ARGUMENT**

## I. THE APPLICABLE LEGAL STANDARD

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Consequently, a district court may "stay a case pending the resolution of related proceedings in another forum." *Suncoast Waterkeeper v. City of St. Petersburg*, No. 8:16-CV-3319-T-27AEP, 2018 WL 8369385, *1 (M.D. Fla. Jan. 22, 2018) (citing *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000)). Where "a federal appellate decision . . . is likely to have a substantial or controlling effect on the claims and issues," a stay may be warranted. *Tel. Sci. Corp. v. Hilton Grand Vacations Co., LLC*, No. 6:15-CV-969-ORL-41DAB, 2015 WL 7444409, *3 (M.D. Fla. Nov. 20, 2015) (quoting *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009)). Such stays are routinely issued when a pending Supreme Court ruling may be dispositive or significantly affect the case being stayed.[1]

In determining whether to grant a stay, "courts examine general factors such as whether a

[1] *See, e.g.*, *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1247 (11th Cir. 2011); *Assoc. for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 956 (11th Cir. 2005); *Saleh v. Me Bath Spa Experience, LLC*, No. 17-CV-62322, 2018 WL 398325, *4 (S.D. Fla. Jan. 12, 2018); *Ricks v. Allied Interstate, LLC*, No. 3:16-CV-00205-HES-PDB, 2016 WL 4505173 (M.D. Fla. July 11, 2016); *Shahin v. Synchrony Fin., et al.*, No. 8:15-cv-02941-MSS-EAJ, 2016 WL 4502461 (M.D. Fla. Apr. 12, 2016); *Luster v. Sterling Jewelers*, No. 1:15–cv–2854, 2015 WL 9255553, *3 (N.D. Ga. Dec. 17, 2015); *Mackiewicz v. Nationstar Mortg., LLC*, Case No. 6:15-cv-00465, 2015 WL 11983233 (M.D. Fla. Nov. 10, 2015); *Colby v. Publix Super Mkts., Inc.*, No. 2:11-CV-590-RDP, 2012 WL 2357745, *2-3 (N.D. Ala. 2012); *Bainbridge v. Tuter*, No. 8:99-CV-2681-T-27TBM, 2004 WL 5579425, *1 (M.D. Fla. Sept. 24, 2004); *Held v. Davis*, 778 F. Supp. 527, 528 (S.D. Fla. 1991); *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1557 (M.D. Fla. 1987); *Sigvartsen v. Smith Barney Harris Upham & Co.*, No. 84-540-CIV-T-15, 1985 WL 8033, *1 (M.D. Fla. May 31, 1985).

stay will unduly prejudice or tactically disadvantage the non-moving party; simplify the issues and streamline trial; and reduce the burden of litigation on the parties and on the court." *Omnipol, a.S. v. Multinational Def. Servs., LCC*, No. 8:19-CV-794-T-33TGW, 2019 WL 4891398, *1 (M.D. Fla. June 3, 2019). *See also, e.g., Incarcerated Entm't, LLC. v. Cox*, No. 18-21991-CIV, 2018 WL 5807650, *2 (S.D. Fla. Nov. 6, 2018); *Kennedy v. Del Viso, LLC*, No. 15-80699-CIV, 2015 WL 13554981, *1 (S.D. Fla. Sept. 11, 2015). The proponent of a stay has the burden of proving the requested stay is justified. *See Clinton v. Jones,* 520 U.S. 681, 708 (1997).

Courts have "broad discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir.2001). "In the class-action context, the Court may, in the interests of fairness and efficiency, order discovery on issues of class certification while postponing class-wide discovery on the merits." *Physicians Healthsource, Inc. v. Anda, Inc.*, No. 12-60798-CIV, 2012 WL 7856269, at *1 (S.D. Fla. Nov. 27, 2012) (citing *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570–71 (11th Cir.1992)). "The drafters of the Federal Rules of Civil Procedure similarly recognized that certification of a class may be delayed in order to conduct discovery on and dispose of a purported class representative's individual claims." *Id.* (citing Fed.R.Civ.P. 23 advisory committee's note (2003) ("The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified.")).

## II. THE PROCEEDINGS SHOULD BE STAYED PENDING THE RULING IN *AAPC*

The applicable factors all weigh in favor of granting a relatively brief stay of the proceedings of, at most, five months pending the Supreme Court's ruling in *AAPC*. If the restrictions of 47 U.S.C. § 227(b)(1)(A), which forms part of the basis of Plaintiff's claims, (*see*

ECF at ¶¶ 66-73), are invalidated as unconstitutional, that would simplify the issues in this case by disposing of Count I of the Complaint entirely. Plainly, a court cannot enforce an unconstitutional statute.

**a. A Decision in *AAPC* is Imminent and May Dispose of this Suit**

The requested stay will not be immoderate or indefinite in duration. A stay is not immoderate or indefinite in duration where "[t]he Supreme Court has already granted *certiorari*," because that "means . . . a decision is imminent within a year." *Boise v. ACE USA, Inc.*, No. 15-CIV-21264, 2015 WL 4077433, *6 (S.D. Fla. July 6, 2015). Since the Supreme Court has granted *certiorari* in *AAPC*, this standard is met. Moreover, according to a 2015 article from the Duke Law Review, which sampled 7,219 cases decided by the United States Supreme Court between 1946 and 2012, 99 percent of Supreme Court cases are decided in the same term in which *certiorari* is granted. Lee Epstein, *et al*., *The Best for Last: The Timing of U.S. Supreme Court Decisions*, 64 Duke L.J. 991, 993 nn.5 & 6 (2015). Just last week, the Supreme Court set oral argument in *AAPC* for April 22, 2020. *See* Ex. B at 2 (*AAPC* docket, available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19-631.html). It is therefore reasonable to expect a ruling in *AAPC* by the end of June 2020, when the Supreme Court's current term will end. Such a stay of, at most, four or so months cannot be deemed to be of indefinite or immoderate length.

If the Supreme Court finds that the prohibition on the use of automatic telephone dialing systems set forth in § 227(b)(1)(A) is an unconstitutional restriction on speech that must be severed from the TCPA, then Plaintiff's claim under that section would be extinguished. Simply put, "[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

*Norton v. Shelby County*, 118 U.S. 425, 442 (1886). Thus, the question of whether the Fourth Circuit's invalidation of only the "government debt collection" exemption was correct, or if the underlying restrictions of § 227(b)(1) that are also at issue in this case should also be invalidated, will have direct and potentially dispositive application to this lawsuit.

As a general matter, when concluding that an exception to a speech restriction shows that the restriction is unconstitutional, courts have consistently invalidated the restriction – as relevant in this case, 47 U.S.C. § 227(b)(1)'s prohibition on the use of prerecorded voices – and not just the exception (because keeping the restriction in place would, ironically, result in more restricted speech).[2] The Eleventh Circuit recently suggested that it believes the entire law may be invalid on this ground in a case that did not involve any attempts to collect debt issued or guaranteed by the United States. *See Glasser*, 2020 WL 415811, *5 ("[H]ow could it be consistent with the First Amendment to make exceptions for calls with a specific content, such as the exception for calls about government debts?") (citing *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 169-171 (4th Cir. 2019)). Thus, it is hardly a far-fetched notion that the Supreme Court may rule in a manner that will lead to the invalidation of at least one of the TCPA provisions at issue in this lawsuit.

---

[2] *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-66 (2011); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592-93 (1983); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 795 (1978); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 (1972). *See also, e.g., Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072-73 (3d Cir. 1994) (declining to sever unconstitutional exception to ordinance regarding content of advertising signs, even though "the rest of the statute could surely function independently," because "[e]liminating the offending exception would mean that we would be requiring the State to restrict more speech than it currently does"); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) (criticizing the district court for invalidating "only the exemption" to a permit requirement because that leaves plaintiff "in a worse position than if the City had prevailed, and thus the permit requirement "must also be declared unconstitutional as it exists in this statutory framework").

It is hard to imagine a scenario that would be more dispositive to Count I, and streamline the issues in this case, than for the sole basis for that claim to be ruled unconstitutional, and thus unenforceable. Numerous district courts have stayed TCPA lawsuits when an appellate court was set to issue a controlling ruling that was likely to have a substantial effect on narrowing or streamlining the claims and issues.[3] Here, the potential outcome of the *AAPC* ruling could be to completely dispose of Plaintiff's TPCA claims under § 227(b).

**b. Staying This Action Will Conserve Judicial Resources**

A stay is appropriate at this time because of *AAPC's* potentially dispositive consequences for the case at hand. Indeed, there is a distinct possibility that a portion of Plaintiff's claims will become null and void as a result of the Supreme Court's decision. If that happens, "any judicial resources spent on this matter between now and then would essentially be to no avail." *Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577, 2015 WL 5947669, *4 (W.D. Pa. Oct. 13, 2015). To paraphrase Judge Cooke, "the significant time, expense, and resources required to litigate this case on the merits will be for naught if the Supreme Court rules" that the same restrictions at issue in this lawsuit violate the First Amendment and are therefore unconstitutional and invalid. *Boise*, 2015 WL 4077433 at *5 (internal quotation omitted). In granting a stay pending the Supreme Court's ruling, a court in the Middle District of Florida recently held as follows "that any proceedings before the Supreme Court issues guidance in the upcoming *Barr v. Am. Ass'n* will be—among other things—a waste of judicial resources and a waste of the parties' time and

[3] *See, e.g.*, *Barnes v. CS Mktg. LLC*, No. 19-24218-CIV, 2020 WL 30373, *3 (S.D. Fla. Jan. 2, 2020); *Saleh v. Me Bath Spa Experience, LLC*, No. 17-CV-62322, 2018 WL 398325, *4 (S.D. Fla. Jan. 12, 2018); *Ricks v. Allied Interstate, LLC*, No. 3:16-CV-00205-HES-PDB, 2016 WL 4505173 (M.D. Fla. July 11, 2016); *Shahin v. Synchrony Fin., et al.*, No. 8:15-cv-02941-MSS-EAJ, 2016 WL 4502461 (M.D. Fla. Apr. 12, 2016); *Mackiewicz v. Nationstar Mortg., LLC*, Case No. 6:15-cv-00465, 2015 WL 11983233 (M.D. Fla. Nov. 10, 2015); *Tel. Sci.*, 2015 WL 7444409 at *3.

energy." *See* Ex. A at 2. Accordingly, it is in the best interests of judicial economy to conserve the Court's resources for those actions in which there is not a risk that a relatively imminent decision (by the end of June 2020) from the Supreme Court will undo any Court decisions and vitiate any costly and extensive motion practice, briefing, and discovery conducted by the litigants.

**c. A Stay Will Benefit the Public Interest**

The requested stay would also be in the public interest. Moving forward with the Sword of Damocles-like situation of the Supreme Court ruling looming over the ensuing proceedings, when it could dispose of part of this action and simplify the proceedings, would not serve any party's or potential class member's interests. Not only would all of the parties suffer prejudice should this case not be stayed, but the public at large would, as well, particularly since "[a] moderate delay here will free up judicial resources." *Boise*, 2015 WL 4077433 at *6. *See also*, *e.g.*, *Southstar Capital Group, I, LLC v. 1662 Multifamily LLC*, No. 6:18-CV-1453-ORL-40DCI, 2019 WL 3752892, *5 (M.D. Fla. Aug. 8, 2019) (finding stay appropriate because "a stay would serve the public interest by preserving judicial economy and ensuring the orderly progression of this litigation."); *Lopez v. Miami-Dade County*, 145 F. Supp. 3d 1206, 1208 (S.D. Fla. 2015) (staying proceedings because "there is a public interest in judicial economy and efficiency"). Absent a stay, those limited judicial resources might ultimately be wasted. The public interest would be better served by entering a brief stay of most likely no more than five months in this case and allow the Court's time and resources to be directed toward the other matters on its case docket during the stay, particularly when any time spent on this case in the next five months may end up being for naught.

**d. None of the Parties Will Suffer a Hardship or Prejudice from a Stay**

Should a stay be granted, no prejudice will befall any party. While Plaintiff may argue she has the right to the speedy resolution or her claims, "having to wait" even as much as "eight to nine months to continue litigation is not, itself, sufficiently prejudicial to outweigh the very plain benefits of staying the case, particularly when the issues pending at the Supreme Court go to this Court's power to hear the case." *Duchene*, 2015 WL 5947669 at *4. Indeed, courts generally have found that a stay of up to a year does not constitute undue prejudice. *See Jean v. City of Dallas, Texas*, No. 3:18-CV-2862-M, 2019 WL 4597580, *3 (N.D. Tex. Sept. 22, 2019); *Quinn-White v. Novartis Pharm. Corp.*, No. CV 16-4300 PSG (AGRx), 2016 WL 11519285, *4 (C.D. Cal. Oct. 7, 2016); *Boise*, 2015 WL 4077433 at *6. The hardship to USHEALTH if the case continues and the lack of hardship to Plaintiff and putative class members if the case is stayed further weigh in favor of a brief stay of the proceedings in this case until the Supreme Court issues its ruling in *AAPC*.

**III. ALTERNATIVELY, DISCOVERY SHOULD BE BIFURCATED TO ADDRESS THE MERITS OF PLAINTIFF'S INDIVIDUAL CLAIMS PRIOR TO CLASS-WIDE DISCOVERY**

If, for some reason, the Court does not stay this case pending a ruling in *AAPC*, then it would be appropriate to bifurcate discovery, as previously requested by USHEALTH, (*see* ECF 11 at 5), to address the merits of Plaintiff's individual claims prior to engaging in burdensome class-wide discovery. Bifurcation would be appropriate for two reasons: (1) because determining whether an ATDS was used to send the alleged text messages to Plaintiff may be dispositive of Count I; and (2) because determining whether Plaintiff used her telephone number for business purposes may be dispositive of Count II. Where there are clearly dispositive issues to be resolved with a plaintiff's individual claims, courts have found bifurcation of discovery to be appropriate.

*See Physicians Healthsource, Inc. v. Anda, Inc.*, No. 12-60798-CIV, 2012 WL 7856269, at *2 (S.D. Fla. Nov. 27, 2012). *See also Antoine v. Sch. Bd. of Collier Cty.*, No. 216CV379FTM38MRM, 2018 WL 9617243, at *1 (M.D. Fla. Apr. 18, 2018). As the determination of whether an ATDS was used, and whether Plaintiff has standing, may dispose of this entire action if resolved in favor of Defendants, and class-wide (and other) discovery will not affect the resolution of this issue, bifurcation will conserve the resources of the parties and the court, and streamline the proceedings.

**a. Count I Fails If an ATDS Was Not Used**

Now that the Seventh and Eleventh Circuits have clarified the definition of an ATDS under the TCPA, this Court will be able to determine as matter of law whether the system used to allegedly text Plaintiff constitutes an ATDS. Either the system "has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers," 47 U.S.C. § 227(a)(1), or it does not. If the latter, then the sender of the alleged text messages cannot be liable for a violation of § 227(a)(1). Plain and simple. *See Gadelhak*, 2020 WL 808270, at *1, *4-5, *13; *Glasser*, 2020 WL 415811, at *2-8; *Dominguez*, 894 F.3d at 121. This Court can be assured that USHEALTH relies on more than mere speculation that the system does not meet the ATDS standard – it relies on Plaintiff's allegations directly. Plaintiff has pleaded that the platform at issue retrieved telephone numbers from a pre-existing list. *See* Compl. at ¶ 44. If that is true, then the platform is not an ATDS, and Count I fails.

**b. Count II Fails If Plaintiff Uses Her Telephone Number as A Business Line**

Like Count I, Count II can be efficiently disposed of without burdening the parties or the court with class-wide discovery. Count II alleges violations of 47 U.S.C. § 227(c) for text messages made to a telephone number on the NDNC. However, the validity of an NDNC

registration is a prerequisite to asserting such claims because, if not validly registered, an individual has no standing, i.e., a legally protected interest, to maintain a claim under § 227(c). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff invoking federal jurisdiction bears the burden of establishing the "irreducible constitutional minimum" for standing by demonstrating (1) an injury-in-fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish an injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

"A Plaintiff does not have standing to bring claims predicated on § [227(c)'s] prohibition against sales calls to telephone numbers listed on the National Do Not Call Registry" when "[t]he [p]hone [n]umber is also for business use" because "business numbers are not permitted to be registered on the National Do Not Call Registry." *Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (citing *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Red. 9779, 9785 (June 17, 2008) ("As the Commission has previously stated, the National Do Not Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."); 47 C.F.R. § 64.1200(c)(2) (prohibiting telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.")). *See also Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018); *Charvat v. NMP, LLC*, 656 F.3d 440, 443-44 and 449 (6th Cir. 2011). "[W]hile a telephone

subscriber can have a telephone number registered as 'residential' with the telephone company, ***'if the subscriber holds out such a telephone number to the general public as a business line, the line should not be considered "residential" for the purposes of the TCPA—even if it is registered as "residential" with the telephone company.***'" *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015) (quoting *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369, 2014 WL 4954618 (E.D.N.Y. Oct. 2, 2014) (emphasis added)).

"[B]ecause Plaintiff [holds her phone number] out to the world as a business phone number, [s]he could not register it on the National Do Not Call Registry" and has no legally protected interest under 47 U.S.C. §227(c)(5). *Shelton*, 2019 WL 1641353, at *6. *See also Stevens-Bratton v. TruGreen, Inc.*, No. 2:15-2472, 2020 WL 556405, at *4 (W.D. Tenn. Feb. 4, 2020). And there is no doubt that Plaintiff uses her telephone line for business purposes and continues, to this day, to hold the line out to the public as a *business* line. *See Barbara Berg*, THE KEYES CO., https://barbaraberg.keyes.com/contact.php (last visited February 23, 2020) (PDF version attached as Ex. C).[4] Therefore, Plaintiff's claim under § 227(c) can be disposed of without any class discovery, and bifurcation is appropriate in these circumstances.

---

[4] The PDF version of the website has been provided for the Court's convenience only. The Court may take judicial notice of the website itself because it is an active website containing the information being proffered at the time that it is being proffered. *See Goodloe v. Royal Caribbean Cruises, Ltd.*, No. 18-21125-CIV, 2019 WL 1383655, at *4 (S.D. Fla. Feb. 15, 2019) (taking judicial notice of a website last visited on the day of the court's order referencing the website). *See also Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (confirming that authenticity of existing website information, for judicial notice purposes, could be determined by conducting a "basic Internet search.").

.

Answering these questions of random or sequential number generation, human intervention, and residential use, before class-wide discovery, will save the parties and the court time and resources by avoiding burdensome discovery and the inevitable, accompanying motion practice, among other costs such as reviewing, storing, and producing ESI, document review, retaining experts, and more. Thus, "in the interests of efficiency, Defendants should be allowed to conduct discovery on and submit a dispositive motion as to Plaintiff's individual claims" prior to engaging in class-wide discovery. *Physicians Healthsource*, 2012 WL 7856269, at *2.

## CONCLUSION

The Court should stay this case pending the Supreme Court's decisions in *AAPC* to lessen the Court's and the parties' litigation burden, especially in light of the risk the Court and the parties run by continuing to litigate this action in the face of a Supreme Court decision that could dispose of a substantial portion of this action. It is in the best interests of this Court's available judicial resources, the public interest, and the parties' respective litigation burdens to await decision from the Supreme Court in *AAPC* to ascertain the decision's disposition upon this action. Accordingly, Defendant requests that this Court grant the Motion to Stay pending the Supreme Court's decision in *AAPC*, and ordering such further relief as this Court deems just and proper. Alternatively, if the Court does not find a stay to be appropriate, Defendant requests an order bifurcating discovery so that Defendant may first conduct discovery on and file a dispositive motion as to Plaintiff's individual claims without being burdened by class-wide discovery and its attendant costs. As the foregoing shows, bifurcation is appropriate because the dispositive issues in this case (aside from constitutionality) are whether an ATDS was used and whether Plaintiff uses her telephone number for business purposes.

**CERTIFICATE OF GOOD FAITH**
**CONFERRAL PURSUANT TO LOCAL RULE 7.1(a)(3)**

On February 21, 2020, undersigned counsel for Defendant conferred with Manuel S. Hiraldo, counsel for Plaintiff, regarding the requested relief. The parties were not able to resolve this dispute and Plaintiff opposes the requested relief.

DATED: February 23, 2020

Respectfully submitted,

By: */s/ Gregg I. Strock*

JEFFREY A. BACKMAN
Florida Bar No. 662501
Gregg I. Strock
Florida Bar No. 1010140
GREENSPOON MARDER LLP
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
(954) 491-1120
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
gregg.strock@gmlaw.com
lisa.webster@gmlaw.com

*Attorneys for USHEALTH Advisors, LLC*